*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0202**

State of Minnesota,
Respondent,

vs.

Scott Randall Baynes,
Appellant.

**Filed November 16, 2015
Affirmed
Chutich, Judge**

Ramsey County District Court
File No. 62-CR-14-850

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Samuel J. Clark, St. Paul City Attorney, Tamara S. Larsen, Assistant City Attorney, Yamy Vang, Assistant City Attorney, St. Paul, Minnesota (for respondent)

Bradford W. Colbert, Danielle Thompson (certified student attorney), St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant Scott Baynes challenges his conviction of misdemeanor violation of an order for protection following a stipulated-facts trial. Baynes argues that the district court

erred by finding that he knew of the existence of the order even though the person protected by the order told him that it had been lifted. Because we conclude that the district court's finding is not clearly erroneous, we affirm his conviction.

**FACTS**

Baynes's ex-fiancée, Sherry Rucker, obtained an order for protection in June 2013. According to the terms of the order, it was to last for two years or "until modified or vacated at a hearing."

On January 21, 2014, Rucker went to Ramsey County Court and filed an affidavit to lift the order for protection. A hearing was scheduled on the matter for February 10, 2014. After filing the affidavit but before the hearing, Rucker told Baynes that she had gone to court to lift the order and invited him to stay with her and her two minor children.

Baynes had been staying with Rucker for about ten days when, on February 4, 2014, Saint Paul police received a call from a third party alleging that Baynes violated the order for protection. When officers arrived, Baynes explained that Rucker had gone to court to lift the order. Rucker confirmed Baynes's assertion and explained that she had asked Baynes to stay with her after she was assaulted by her ex-boyfriend.

The officers determined that the order for protection was still valid and took Baynes into custody. The state charged Baynes with one count of misdemeanor violation of an order for protection. *See* Minn. Stat. § 518B.01, subd. 14(b)(2014).

At trial, the parties stipulated to the following facts: there was an existing court order for protection; Baynes was served with and knew about the order for protection; Rucker went to court to have the order dropped on January 21, 2014, and a hearing was

set for the matter for February 10, 2014; Rucker told Baynes that the order had been dropped and invited Baynes to stay with her; and Baynes had been staying with Rucker and her minor children for about ten days. The parties also stipulated to three exhibits: (1) the police reports, (2) the order for protection, and (3) the affidavit of service for the order for protection.

After evaluating the evidence, the district court convicted Baynes of a misdemeanor violation of an order for protection. It then sentenced Baynes to 90 days in jail and stayed the sentence for one year. Baynes appeals.

## D E C I S I O N

The statute under which Baynes was convicted provides, in relevant part, that, "whenever an order for protection is granted by a judge . . . and the respondent or person to be restrained knows of the existence of the order, violation of the order for protection is a misdemeanor." Minn. Stat. § 518B.01, subd. 14(b). The parties stipulated that Baynes violated the order for protection by staying with Rucker and her two children, so the dispositive issue is whether Baynes knew of the existence of the order.

## I. Knowledge of the Order for Protection

The parties raise two component questions, one factual and one legal, in determining whether Baynes knew of the existence of the order. *See id.* The factual question is whether Baynes had a good-faith belief at the time he visited Rucker that the order was no longer in effect. The legal question posed is whether, even if Baynes had a good-faith belief that the order had been lifted, the law only requires him to know of the existence of the order when originally issued. Because we conclude that Baynes did not

3

have a good-faith belief that the order was no longer in effect at the time he visited Rucker, we do not reach the legal question.

## A.    District Court Order

The parties stipulated to most of the relevant facts, but did not stipulate to whether Baynes had a good-faith belief at the time he visited Rucker that the order was no longer in effect.  Further, the parties seem to disagree on whether the district court believed Baynes's contention that he did not know that the order was still in effect.  To resolve this dispute, we examine the language of the district court order.

In reaching its decision, the district court emphasized that Baynes did not receive any paperwork or verification from the court showing that the order had been vacated. The district court articulated the elements of the crime as follows:

> First, there was an existing court order for protection,
>
> Second, [Baynes] knew of the existence of the order,
>
> Third, [Baynes] violated a term or condition of the order, and;
>
> Fourth, [Baynes's] act took place on or about February 4, 2014 in Ramsey County.

But in the findings of fact and conclusions of law, the district court concluded that Baynes was guilty of violating an order for protection because the state proved the following beyond a reasonable doubt:

> that there was a valid [order for protection] in existence, that the defendant knew of the order and *had not received any notification from the court that the order was vacated*, [and] that the defendant was having contact with Sherry Rucker on or about February 4, 2014, in Ramsey County.

4

(Emphasis added.) The district court added the phrase "and had not received any notification from the court that the order was vacated" onto the second element of the crime. Baynes assumes that the facts are undisputed and reads the phrase as making a legal conclusion that the statute only requires the state to prove that he knew about the order when it was issued. The state disagrees and reads the phrase as explaining a factual finding that Baynes did not actually have a good-faith belief that the order was no longer valid.

We conclude that the district court's decision was based on a factual finding that Baynes did not have a good-faith belief that the order had been lifted. Accordingly, we review the district court's finding for clear error. *See State v. Berrios,* 788 N.W.2d 135, 140 (Minn. App. 2010) (stating that a district court's factual determinations are reviewed for clear error), *review denied* (Minn. Nov. 16, 2010).

## B. Sufficiency of the Evidence

Baynes maintains that he had a good-faith belief that the order had been lifted and therefore did not know of the existence of the order when he violated it. Baynes notes that the order for protection did not require him to be in court for the order to be dropped or inform him that he would receive notice or any communication from the district court if the order was lifted. The order only stated that it would be in effect "for a period of two years from the date of this order, or until modified or vacated at a hearing." Baynes argues that he relied on Rucker's information that the order for protection was vacated, and because the statute requires knowledge, it does not matter whether that belief was reasonable.

5

On sufficiency-of-the-evidence review, we review the record "in a light most favorable to the conviction" to determine whether the evidence is sufficient to allow the fact-finder to reach the verdict that it did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We "assume that the [fact-finder] believed all of the state's witnesses and disbelieved any evidence to the contrary." *State v. Chambers*, 589 N.W.2d 466, 477 (Minn. 1999). "We will not disturb the verdict if the [fact-finder], acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was proven guilty of the offense charged." *State v. Nelson*, 812 N.W.2d 184, 187 (Minn. App. 2012) (quotation omitted).

Here, Baynes's conviction results from the district court's factual finding that he did not have a good-faith belief that the order for protection had been lifted. This finding is not clearly erroneous. The district court could reasonably find, based on the stipulated facts, that Baynes did not have such a good-faith belief.

The parties stipulated that Baynes was served with the order and knew of its contents, including its period of effectiveness, and had not received any notification from the court that the order was vacated. The order itself states that it will be effective for two years unless modified or vacated at a hearing. Tellingly, it specifically warns Baynes that he "must not enter or stay at [Rucker]'s residence for any reason, even if invited to do so." The district court reasonably found that "[b]eing misled by a protected party is not enough to overcome the language contained in the [order for protection]."

Given that factual finding, sufficient evidence in the record supports the district court order. We conclude that a fact-finder acting with due regard for the presumption of

6

innocence and the requirement of proof beyond a reasonable doubt could reasonably conclude that Baynes was guilty of the charged offense.

## II. Due Process Claim

Baynes finally contends that he is entitled to a judgment of acquittal because the stipulated facts support a good-faith mistake-of-fact defense. Baynes supports this claim by asserting a due-process right to present an affirmative defense, citing this court's precedent in *State v. Wiltse*. 386 N.W.2d 315, 318 (Minn. App. 1986) (reasoning that "it is difficult to imagine a situation where, when an essential element of a crime turns on the presence of a defendant, the defendant could be prevented from explaining his presence at the scene to the jury"), *review denied* (Minn. June 30, 1986).

Baynes's argument is unavailing. As discussed above, the parties did not actually stipulate to all the facts required for Baynes's good-faith mistake-of-fact defense. The district court reasonably found that Baynes did not have a good-faith belief that the order had been lifted.

In addition, *Wiltse* does not apply because Baynes was not prevented from presenting his defense to the fact-finder. Baynes explained his presence at Rucker's house and stipulated to facts relevant to his defense. Due process does not require that the district court believe his defense or grant him a judgment of acquittal.

**Affirmed.**

7